# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MITCHELL McATEER,** | } | |
| **on behalf of himself and all others** | } | |
| **similarly situated,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:17-cv-00859-MHH** |
| | } | |
| **DCH REGIONAL MEDICAL** | } | |
| **CENTER, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

In this putative class action, plaintiff Mitchell McAteer alleges that defendants DCH Regional Medical Center, DCH Health Systems, and Avectus Healthcare Solutions, LLC improperly billed DCH patients and tried to collect payments to which the defendants were not entitled.[1]  Mr. McAteer asserts state law claims against DCH and Avectus for tortious interference with a contractual relationship or business expectancy, unjust enrichment, money paid by mistake, civil conspiracy, breach of contract (third party beneficiary), and violations of the Alabama Deceptive Trade Practices Act.  (Doc. 1, pp. 10-13).

---

[1] The proper name of DCH Health Systems is DCH Healthcare Authority.  DCH Healthcare Authority does business as DCH Regional Medical Center.  (Doc. 30-2, ¶ 2).  At times in this opinion, the Court refers to the DCH defendants collectively as DCH.

Mr. McAteer contends that he may litigate his state law claims in federal court pursuant to the Class Action Fairness Act or CAFA. *See* 28 U.S.C. § 1332(d). The defendants acknowledge that CAFA provides a basis for federal jurisdiction, but they argue that the local controversy and home state exceptions to CAFA apply, so that the Court must "decline to exercise jurisdiction." 28 U.S.C. § 1332(d)(4). Pursuant to Federal Rule of Civil Procedure 12(b)(6), the defendants ask the Court to dismiss this action. (Docs. 10, 12).[2]

For the reasons explained below, the Court agrees that CAFA provides a basis for federal jurisdiction. The Court finds that CAFA's local controversy exception does not apply. Based on the face of the complaint, the Court cannot determine whether it should decline to exercise jurisdiction under CAFA's home state exception. Therefore, the Court gives the parties an opportunity to engage in limited jurisdictional discovery to enable the Court to more fully examine the parties' arguments with respect to the home state exception.

---

[2] Mr. McAteer acknowledges that the defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), but he contends that "[Rule] 12(b)(1) appears to be the rule upon which [d]efendants base their motion" because the defendants' "entire argument is based on subject-matter-jurisdiction." (Doc. 19, p. 2). CAFA's exceptions "do not affect the existence of subject matter jurisdiction." *Hunter v. City of Montgomery, Ala.*, 859 F.3d 1329, 1334 (11th Cir. 2017) (emphasis in *Hunte*r). Rather, CAFA's "text recognizes that the court has jurisdiction but prevents the court from exercising it if either exception applies." *Hunter*, 859 F.3d at 1334. Accordingly, the Court analyzes the defendants' motion as a Rule 12(b)(6) motion, not as a Rule 12(b)(1) motion.

## I.    Standard of Review

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *See Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015). The Court reviews Mr. McAteer's factual allegations accordingly.

## II.    CAFA Jurisdiction Exists.

Pursuant to 28 U.S.C. § 1332(d)(2)(A), "CAFA grants subject matter jurisdiction to federal district courts over class actions in which (1) any member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant, (2) the aggregate amount in controversy exceeds $5 million, and (3) the proposed plaintiff class contains at least 100 members." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014). Mr. McAteer's putative class action meets the three criteria for federal jurisdiction under § 1332(d).

With respect to the issue of citizenship, Mr. McAteer is a citizen of Alabama because he is domiciled in Alabama. (Doc. 30-1, ¶ 2). Avectus, a limited liability company, is a citizen of every state of which each of its members is a citizen. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022

(11th Cir. 2004). Avectus is a citizen of Delaware, Kentucky, and Mississippi. (Doc. 30-2, ¶¶ 4-5; Doc. 35, p. 1).[3] Thus, a member of the plaintiff class is a citizen of a state different from the state of citizenship of one of the defendants. With respect to class size and amount in controversy, Mr. McAteer alleges that the class consists of at least 100 members and that more than $5,000,000 is in controversy. (*See* Doc. 1, ¶¶ 9, 41). The defendants do not challenge these allegations; the Court accepts them as true. Therefore, the Court may exercise jurisdiction over Mr. McAteer's state law claims pursuant to CAFA.

Although a federal district court may have CAFA jurisdiction, a court may not exercise CAFA jurisdiction "if either the local controversy exception or the home state exception applies." *Hunter v. City of Montgomery, Ala.*, 859 F.3d 1329, 1335 (11th Cir. 2017). In this case, the defendants contend that both exceptions require the Court to decline to exercise its jurisdiction. As the parties seeking dismissal based on CAFA's exceptions, the defendants "bear the burden of showing that at least one of the exceptions does apply." *Hunter*, 859 F.3d at 1335.

---

[3] Avectus has two members: BHS Hospital Services, Inc. and SVN Holdings, LLC. (Doc. 30-2, ¶ 4). BHS Hospital Services, Inc. is a Delaware corporation with its principal place of business in Kentucky. Therefore, BHS Hospital Services, Inc. is a citizen of Delaware and Kentucky. *See* 28 U.S.C. § 1332(c)(1). SVN Holdings, LLC has one member, an individual who is domiciled in Mississippi. (Doc. 35, p. 1). Therefore, SVN Holdings, LLC is a citizen of Mississippi. *See Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013) (With respect to individuals, "[c]itizenship is equivalent to domicile for purposes of diversity jurisdiction.") (internal quotation marks omitted).

## III. CAFA's Local Controversy Exception

CAFA's local controversy exception provides:

A district court shall decline to exercise jurisdiction under paragraph (2)-

(A)(i) over a class action in which-

> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

> (II) at least 1 defendant is a defendant-

>> (aa) from whom significant relief is sought by members of the plaintiff class;

>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

>> (cc) who is a citizen of the State in which the action was originally filed; and

> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons;

28 U.S.C. § 1332(d)(4)(A). Thus, the local controversy exception has four elements: (1) citizenship of the plaintiff class; (2) significant defendant; (3) principal injuries; and (4) similar class actions. The defendants can establish all but the fourth element of the local controversy exception.

It is undisputed that the plaintiffs filed this action in Alabama. (Doc. 1). With respect to the citizenship of the members of the plaintiff class, the defendants argue, and Mr. McAteer does not dispute, that more than two-thirds of the members of the proposed plaintiff class are Alabama residents. (Doc. 10, pp. 3-4; Doc. 19, p. 4, n.3). The Court agrees: by definition, the proposed plaintiff class consists of Alabama residents. (*See* Doc. 1, ¶ 40(a)) (defining the class as "[a]ll Alabama residents. . .").[4] But for purposes of subject matter jurisdiction, residency is not synonymous with citizenship. *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013). A private individual is a citizen of the state in which he or she is domiciled. Domicile requires both residence in a state and an intention to remain there indefinitely. *Travaglio*, 735 F.3d at 1269.

The proposed plaintiff class may include members who reside in Alabama but are not citizens of Alabama. For example, the proposed class of Alabama residents may include college students who are domiciled in another state but live

---

[4] Mr. McAteer seeks to represent a class of:

> [a]ll Alabama residents who have received any type of healthcare treatment from any entity located in Alabama that is owned or affiliated with Defendants DCH Regional Medical Center and/or Defendant DCH Health Systems while being covered by valid commercial health insurance, and whose medical bills resulting from that treatment were either not submitted to health insurance for payment or were submitted and thereafter Defendants refunded those payments to their health insurance carriers and Defendants obtained payment for those bills directly from the patient, from an auto insurer, and/or from the patient's third-party tort recovery. . . .

(Doc. 1, ¶ 40(a)).

in Alabama, individuals who have moved to Alabama for a period of time to care for a sick family member or for a job with a finite term and who intend to return to their states of domicile, and members of the armed services who are domiciled in other states but reside in Alabama. Nevertheless, the Court reasonably concludes that the number of individuals who fall into these or similar categories is small. Therefore, the Court finds that more than two-thirds of the members of the plaintiff class are Alabama citizens.

For purposes of the local controversy exception, the DCH defendants are significant defendants. The DCH defendants are citizens of Alabama. (Doc. 30-2, ¶ 2).[5] Although CAFA does not define "significant relief" or "significant basis," in *Evans v. Walter Indus., Inc.*, 449 F.3d 1159 (11th Cir. 2006), the Eleventh Circuit explained that the party seeking to invoke the local controversy exception must show that the relief that the plaintiff seeks from a local defendant is "a significant portion of the entire relief sought by the class." 499 F.3d at 1167. A straightforward reading of the allegations in the complaint demonstrates that DCH's conduct forms a significant basis for the claims and that the plaintiff class seeks significant relief from DCH. (Doc. 1, ¶¶ 3.a, 3.b; Doc. 1, ¶¶ 10-38).

---

[5] DCH Healthcare Authority is an Alabama corporation with its principal place of business in Alabama, and DCH Healthcare Authority does business as DCH Regional Medical Center. (Doc. 30-2, ¶ 2). Therefore, the DCH defendants are citizens of Alabama. *See* 28 U.S.C. § 1332(c)(1) (For purposes of diversity of citizenship, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business.").

According to Mr. McAteer, DCH "wrongfully sent improper collection notices and collected payments for medical services in amounts that violate" various agreements, including the terms of a service provider contract that DCH entered with Blue Cross and Blue Shield of Alabama and the terms of the general consent for treatment that Mr. McAteer and the class members entered with DCH. (Doc. 1, ¶ 3.a.). Mr. McAteer alleges that DCH breached its duty as attorney-in-fact to him "by seeking reimbursement from [him] beyond the contractually agreed amounts due for medical services provided." (Doc. 1, ¶ 3.b.). To qualify as a class member, an individual must have received treatment at DCH. (Doc. 1, ¶ 40.a.). Mr. McAteer seeks "actual damages, punitive damages, penalties," and other remedies from DCH. (Doc. 1, ¶ 100.c.). Mr. McAteer also seeks a declaration that DCH violated Alabama law, and, as a result, has been unjustly enriched. (Doc. 1, ¶¶ 100.b., 100.d.). In addition, Mr. McAteer seeks to enjoin DCH's unlawful billing practices. (Doc. 1, ¶ 100.g.). Thus, DCH is a significant defendant.

Because more than two-thirds of the members of the plaintiff class are Alabama citizens from whom the defendants allegedly wrongfully sought reimbursement for medical care that the putative class members received at DCH facilities in Alabama, the members of the putative plaintiff class incurred the principal injuries resulting from the defendants' alleged conduct in Alabama.

Thus, this action satisfies the first three elements of the local controversy exception to CAFA jurisdiction.

But the Court does not have to decline to exercise jurisdiction over this matter pursuant to the local controversy exception to CAFA jurisdiction because the defendants cannot demonstrate that during the 3-year period before Mr. McAteer filed his complaint, "no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii). The defendants concede that in the three years before Mr. McAteer filed his complaint, plaintiffs filed two class actions concerning DCH's billing practices in Tuscaloosa County, Alabama Circuit Court. (Doc. 10, p. 6) (citing *Laura Tucker v. DCH*, Case Number 63-CV-2016-900254, and *Shalonda King v. DCH*, Case Number 64-CV-2016-900377). These two class actions in Tuscaloosa County Circuit Court involve state law claims against DCH. (*See* Doc. 2 in Case 63-CV-2016-900254; Doc. 2 in Case Number 63-CV-2016-900377).[6]

---

[6] The records for the state court actions are available on the Alacourt website. The Court takes judicial notice of those records. *See Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010) (district court properly took judicial notice of documents related to another civil action because the documents "were public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'") (quoting Fed. R. Evid. 201(b); other internal citations omitted). The Court cites to entries on the Alacourt case action summary by document and case number.

With respect to the two Tuscaloosa County class actions, the defendants argue that because there is no basis for federal subject matter jurisdiction in either case, the class actions do not qualify as "other class actions" for purposes of the local controversy exception because the "Judicial Panel on Multidistrict Litigation would not be able to coordinate or consolidate these actions in any way." (Doc. 10, p. 6). In support of their argument, the defendants rely on the portion of the Senate Judiciary Committee's report on CAFA which explains part of the rationale for the "other class action" element of the local controversy exception. The report states:

> The Committee wishes to stress that another purpose of this criterion is to ensure that overlapping or competing class actions or class actions making similar factual allegations against the same defendant that would benefit from coordination are not excluded from federal court by the Local Controversy Exception and thus placed beyond the coordinating authority of the Judicial Panel on Multidistrict Litigation.

S. Rep. 109-14 (2005), 2005 WL 627977, at *40-41. The defendants contend that "it logically follows from this rationale that, if there is no federal jurisdiction over prior class actions, there is no way that the Judicial Panel on Multidistrict Litigation could consolidate those actions," eliminating the efficiency rationale for the local controversy exception to CAFA jurisdiction. (Doc. 10, p. 6). The Court is not persuaded that it should not count the state class actions in the local controversy analysis.

To evaluate the local controversy exception, the Court need not revert to legislative history because the plain language of CAFA is unambiguous: CAFA defines "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). The two state court class actions, filed pursuant to Rule 23 of the Alabama Rules of Civil Procedure, are by definition CAFA "class actions." (*See e.g.*, Doc. 2 in Case 63-CV-2016-900254 ("This is a class action brought pursuant to Ala. R. Civ. P. 23 by Plaintiff Laura Tucker. . . .").[7] The plaintiffs in the state court class actions assert factual allegations and legal theories against DCH similar to Mr. McAteer's factual allegations and theories of recovery.[8] Accordingly, because the Tuscaloosa Circuit Court class actions were filed within the three years preceding Mr. McAteer's complaint and because the actions address the "same or similar factual allegations" against DCH, the

---

[7] In her complaint in Case 64-CV-2016-900377, the named plaintiff invokes Rule 23 of the Federal Rules of Civil Procedure. (Doc. 2, pp. 7, 12 in Case 64-CV-2016-900377). The Court assumes that the plaintiff in Case 64-CV-2016-90037 intended to cite Rule 23 of the Alabama Rules of Civil Procedure.

[8] The named plaintiffs in the state court class actions assert claims for breach of contract, unjust enrichment, and declaratory and injunctive relief against DCH based on DCH's alleged practice of billing patients in excess of the amount that DCH contractually was required to accept through an agreement with the patients' health insurer. (Doc. 2 in Case 63-CV-2016-900254; Doc. 2 in Case 63-CV-2016-900377); *compare*, Doc. 1, ¶ 3.a.i. ("DCH Regional Medical Center . . . wrongfully sent improper collection notices and collected payments for medical services that violate the terms of the Services Provider Agreement entered into by Defendants DCH Regional Medical Center, DCH Health systems with Blue Cross and Blue Shield of Alabama ("BCBSA") of which Plaintiff Mitchell McAteer is a member.")).

Tuscaloosa Circuit Court class actions qualify as "other class actions" for purposes of the local controversy exception.

In his response to the defendants' motion to dismiss, Mr. McAteer identifies two federal court class actions that plaintiffs filed against Avectus in the three years preceding Mr. McAteer's complaint. Mr. McAteer argues that these cases also are similar class actions for purposes of the local controversy exception. (Doc. 19, p. 5) (citing *Jenkins v. Moses H. Cone Mem'l Health Services. Corp.*, No. 5:15-cv-34-FL, 2015 WL 6449296 (E.D.N.C. Oct. 23, 2015), and *Raymond v. Avectus Healthcare Sols., LLC*, 859 F.3d 381 (6th Cir. 2017)). The named plaintiff in *Jenkins* initially filed suit in North Carolina state court, invoking Rule 23 of the North Carolina Rules of Civil Procedure. The defendants subsequently removed the *Jenkins* action to federal court. (Doc. 1-1 in Case 5:15-cv-34-FL, *Jenkins v. Moses H. Cone Mem'l Health Services. Corp.* (E.D.N.C.)).[9] The named plaintiff in *Raymond* filed suit in federal court pursuant to Rule 23 of the Federal Rules of Civil Procedure. (Doc. 1 in Case 1:15-cv-559-MRB, *Raymond v. Avectus Healthcare Sols., LLC* (S.D. Ohio)).[10] These cases are "other class actions" under

---

[9] The record for the *Jenkins* action is available on the PACER website. The Court takes judicial notice of the record. *See* note 6, above.

[10] In *Raymond*, the plaintiff invoked federal subject matter jurisdiction under 28 U.S.C. § 1331 with respect to claims under the Fair Debt Collection Practices Act and supplemental jurisdiction under 28 U.S.C. § 1367 with respect to state law claims. (Doc. 1 in Case 1:15-cv-559-MRB, *Raymond v. Avectus Healthcare Sols., LLC* (S.D. Ohio)). The record for the *Raymond* action is

CAFA because they are actions "filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure." 28 U.S.C. § 1332(d)(1)(B).

The plaintiffs' allegations in the *Jenkins* and *Raymond* class actions are the same as or similar to Mr. McAteer's allegations against Avectus. In both *Jenkins* and *Raymond*, the plaintiffs allege that Avectus, as a debt collection agent for a particular hospital entity, sought payment from the plaintiffs directly or through third-party liens for bills that exceeded previously negotiated contractual rates between the hospital and the plaintiffs' insurance companies. (Doc. 1-1 in Case 5:15-cv-34-FL, *Jenkins v. Moses H. Cone Mem'l Health Services. Corp.* (E.D.N.C.); Doc. 1 in Case 1:15-cv-559-MRB, *Raymond v. Avectus Healthcare Sols., LLC* (S.D. Ohio)). These allegations are nearly identical to the allegations that Mr. McAteer asserts against Avectus in this action. (*See generally*, Doc. 1, ¶ 3.a.i. ("DCH Regional Medical Center and their debt collection agent Avectus wrongfully sent improper collection notices and collected payments for medical services that violate the terms of the Services Provider Agreement entered into by Defendants DCH Regional Medical Center, DCH Health systems with Blue Corss

---

available on the PACER website. The Court takes judicial notice of the record. *See* note 6, above.

and Blue Shield of Alabama ("BCBSA") of which Plaintiff Mitchell McAteer is a member.")).

The defendants argue that the *Jenkins* and *Raymond* actions do not satisfy the "other class action" element because:

> Both cases are centered on the conduct of different plaintiff patients and different defendant hospitals, and involve different contractual relationships with different healthcare insurers. There is not a single relevant question of law or fact that overlaps between the cases. For instance, as noted, the crux of this case is whether DCH was contractually barred by its agreement with [Blue Cross and Blue Shield of Alabama] from pursuing a hospital lien rather than submitting a claim to [Blue Cross and Blue Shield of Alabama].

(Doc. 21, p. 5). The defendants also maintain that "[a] finding in <u>Jenkins</u> that the defendant hospital was contractually barred from asserting a hospital lien or in <u>Raymond</u> that the defendant hospital was statutorily-barred from doing the same says nothing about DCH's contractual duties in this case." (Doc. 21, p. 6). The Court does not disagree, but the defendants' position ignores the plain meaning of CAFA. CAFA does not require common questions or law or fact. CAFA does not require identical parties. For an action to qualify as another "class action" for purposes of the local controversy exception, the action need only concern the "same or similar factual allegations against *any* of the defendants on behalf of the same or *other* persons." 28 U.S.C. § 1332(d)(4)(A)(ii) (emphasis added). As stated above, in *Jenkins* and *Raymond*, other plaintiffs (i.e. other persons) assert substantially similar factual allegations against Avectus for Avectus's role in

collecting payments for medical services that violated the terms of agreements between hospitals and insurance companies. Therefore, the Court concludes that Avectus, like DCH, has faced a similar class action lawsuit in the three years preceding the filing of the complaint in this case.[11] Accordingly, the Court finds that the local controversy exception does not apply.

## IV. CAFA's Home State Exception

CAFA's home state exception applies if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). As stated above, two-thirds or more of the members of the plaintiff class are citizens of Alabama. *See* pp. 6-7, above. The home state exception will apply, then, if the primary defendants are citizens of Alabama.

The Court finds, and the parties do not contest, that DCH Healthcare Authority and DCH Regional Medical Center are primary defendants. The DCH defendants are Alabama citizens. (Doc. 30-2, ¶ 2; *see* note 5, above). Avectus is not a citizen of Alabama; Avectus is a citizen of Delaware, Kentucky, and Mississippi. (Doc. 30-2, ¶¶ 3-5; Doc. 35; *see* note 3, above). Therefore, the Court must determine whether Avectus is a primary defendant for purposes of CAFA.

---

[11] The fact that either DCH or Avectus faced similar class action litigation is enough. 28 U.S.C. § 1332(d)(4)(A)(ii) ("no other class action has been filed asserting the same or similar allegations against *any* of the defendants") (emphasis added).

In *Hunter*, the Eleventh Circuit recognized that "[t]he term 'primary defendants' is undefined" in CAFA, and "there are no contextual clues as to its meaning." *Hunter*, 859 F.3d at 1335. After concluding that the dictionary provides little help, the Eleventh Circuit examined CAFA's legislative history. The Eleventh Circuit cited the Senate Judiciary Committee's report on CAFA which states, in relevant part:

> [T]he Committee intends that "primary defend[a]nts" be interpreted to reach those defendants who are the real "targets" of the lawsuit—i.e., the defendants that would be expected to incur most of the loss if liability is found. Thus, the term "primary defendants" should include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members).

*Hunter*, 859 F.3d at 1336 (quoting S. Rep. 109-14 (2005), 2005 WL 627977, at *43).[12]

---

[12] In *Hunter*, the Eleventh Circuit explained that:

> [t]he Senate Judiciary Committee report does not state that its explanation of "primary defendants" applies to the home state exception, § 1332(d)(4)(B). Instead, it says that explanation applies to § 1332(d)(3), which allows remand 'in the interests of justice,' after consideration of six factors, if "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed."

*Hunter*, 859 F.3d at 1336 n.4 (quoting 28 U.S.C. § 1332(d)(3)). But the Court concluded that "[t]here is no good reason to believe that the Senate Judiciary Committee's explanation of 'primary defendants' would not also apply to the home state exception contained in § 1332(d)(4)(B)." *Hunter*, 859 F.3d at 1336 n.4.

The Eleventh Circuit then noted that the House Judiciary Committee report "regarding an earlier version of CAFA contains materially identical language." *Hunter*, 859 F.3d at 1336. The House Judiciary Committee report provides:

> [T]he Committee intends that the only parties that should be considered "primary defendants" are those defendants who are the real "targets" of the lawsuit—i.e., the defendants that would be expected to incur most of the loss if liability is found. Thus, the Committee intends for the term "primary defendants" to include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members).

H.R. Rep. 108-144 (2003), 2003 WL 21321526, at *38. After reviewing CAFA's legislative history, the Eleventh Circuit continued:

> The explanation in the committee reports makes the primary factor in answering the primary defendant question the potential monetary loss that defendant faces—whether it is the real target of the claims seeking damages, has substantial exposure to damages if liability is found, and would incur most of the loss if damages are awarded.

*Hunter*, 859 F.3d at 1336.

In reaching this conclusion, the Eleventh Circuit cited favorably a decision from the Third Circuit Court of Appeals in which that court found that the "House Judiciary Committee's report and other legislative history supports 'constru[ing] the words 'primary defendants' to capture those who are directly liable to the proposed class, as opposed to being vicariously or secondarily liable based upon theories of contribution or indemnification.'" *Hunter*, 859 F.3d at 1336 (quoting

*Vodenichar v. Halcon Energy Props., Inc.*, 733 F.3d 497, 504-05 (3d Cir. 2013) (alteration in *Hunter*). The Eleventh Circuit also noted that "the *Vodenichar* opinion suggests that courts assessing whether a defendant is a 'primary defendant' ask 'whether, given the claims asserted against the defendant, [the defendant] has potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable.'" *Hunter*, 859 F.3d at 1336 (quoting *Vodenichar*, 733 F.3d at 504-05) (alteration in *Hunter*). The Eleventh Circuit stated it "agree[d] with that reasoning and rule, at least where monetary relief is sought." *Hunter*, 859 F.3d at 1336.

Using the *Hunter* criteria to evaluate Mr. McAteer's allegations, the Court finds that with respect to Mr. McAteer's request for compensatory and statutory damages, the Court cannot determine from the face of the complaint whether Avectus "is the real target of the claims seeking damages, has substantial exposure to damages if liability is found, and would incur most of the loss if damages are awarded" because, generally speaking, in his complaint, Mr. McAteer refers to DCH and Avectus collectively and does not specify which defendant engaged in particular conduct. For instance, Mr. McAteer asserts that:

- "Defendants screen all patients and make a determination regarding the reason for treatment and whether there may be sources of payment other than health insurance available." (Doc. 1, ¶ 10);

- "[I]f the patient is identified as one whose medical bills may be recoverable from another source, Defendants refuse to submit that patient's medical bills to his or her health insurance carrier or submit the bills to health insurance, and sometime thereafter, remit those funds back to health insurance after receiving payment from another source." (Doc. 1, ¶ 11);

- "Defendants engaged in these practices even though Defendants are contractually required to submit said bills to the health insurance carrier, accept the payment from health insurance in satisfaction of the bill, not seek payments from any additional sources, and hold the patient harmless from any amounts owed other than co-pays and/or deductibles." (Doc. 1, ¶ 12);

Accepting these and other factual allegations as true, Mr. McAteer avers that Avectus works with DCH to screen patients' potential sources of payment, that Avectus and DCH refuse to submit patients' claims to the appropriate insurance company, and that Avectus and DCH are contractually obligated to accept a negotiated amount for certain medical services and hold patients harmless for any amounts other than co-pays and deductibles. Mr. McAteer specifically alleges that "Avectus and Nominal Defendants Blue Cross Blue Shield, Inc. entered into an express contract." (Doc. 1, ¶ 84). These allegations suggest that Avectus may be more than a mere conduit for payments to DCH and may be a significant target for the plaintiffs' damages claims.

Still, elsewhere in his complaint, Mr. McAteer alleges that:

DCH Regional Medical Center and their debt collection agent Avectus wrongfully sent improper collection notices and collected payments for medical services in amounts that violate

i. the terms of the Services Provider Agreement entered into by Defendants DCH Regional Medical Center, DCH Health systems with Blue Cross and Blue Shield of Alabama ("BCBSA") of which Plaintiff Mitchell McAteer is a member,

ii. the terms of the Services Provider Agreement entered into by Defendants DCH Regional Medical Center, DCH Health systems with Blue Cross and Blue Shield of which Plaintiff are a member,

iii. the terms of the DCH Defendants' offer (the "Offer") to Plaintiff to treat them as an in-network provider of health care services pursuant to the terms of applicable Services Provider Agreement,

iv. the terms of the General Consent for treatment executed by Plaintiff with DCH Health Systems, and

v. Alabama debt collection laws.

(Doc. 1, ¶ 3.a.). These allegations suggest that Avectus is a mere conduit for the collection of payments that DCH seeks, potentially minimizing Avectus's exposure to damages.

Mr. McAteer's various theories of recovery also impact the analysis of the extent to which Avectus qualifies as a significant defendant. For example, if Avectus is not a party to the contracts between DCH and Blue Cross and DCH and individual patients, then Avectus is not a proper party to Mr. McAteer's breach of contract claim, and the plaintiff class would not seek substantial relief from Avectus for breach of contract. If Avectus is a party to a contract with Blue Cross,

and if Avectus breached the terms of the agreement, then it is plausible that Avectus would have substantial exposure to the plaintiff class. In that case, Avectus may be a primary defendant.

Avectus's status as a party to the contract between DCH and Blue Cross and Blue Shield of Alabama also has implications for Mr. McAteer's tortious interference claim. To establish a claim for tortious interference with a contractual relationship, the plaintiff must show that the defendant was "a stranger to the contract with which the defendant allegedly interfered." *BellSouth Mobility, Inc. v. Cellulink, Inc.*, 814 So. 2d 203, 212 (Ala. 2001); *see Lolley v. Howell*, 504 So. 2d 253, 255 (Ala. 1987) ("[A] party to a contract cannot, as a matter of law, be liable for tortious interference with the contract."). If Avectus is a proper defendant to Mr. McAteer's tortious interference claim, then Avectus potentially may be liable for both compensatory and punitive damages. (Doc. 1, ¶¶ 64, 100.c.); *White Sands Groups, L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 17 (Ala. 2009).

With respect to Mr. McAteer's claim under the Alabama Deceptive Trade Practices Act or ADTPA, Mr. McAteer's failure to distinguish the conduct of DCH and Avectus prevents the Court from determining whether Avectus would have substantial exposure for violations of the statute. Mr. McAteer alleges that:

> Defendants and persons under Defendants' direct or indirect control have breached the ADTPA by their actions, which include but are not limited to the following:

a. Failing to submit bills to and/or honor contractual discounts from health insurance carriers despite a contractual obligation to do so;

b. Concealing, suppressing, and/or omitting the fact that Defendants will not submit bills to or accept payments from health insurance carriers despite contractual obligations to do so;

c. Concealing, suppressing, and/or omitting the fact that Defendants will not honor agreed-to balance adjustments, or "discounts," despite obligations to offer said adjustments to insured patients;

d. Misrepresenting Defendants' health care centers as businesses that will accept and submit bills to valid health insurance carriers with whom Defendants have provider agreements;

e. Deceiving their patients to believe their bills are covered by health insurance when Defendants intend to seek payment for services from other sources, including directly from patients, via medical payment benefits from patients' auto insurer, by placing liens on patients' property, or by submitting patients' bills to collection agencies;

f. Violating the duty of good faith in performing health care services by failing to disclose their unfair billing practices to patients and prospective patients;

g. Committing an unfair practice by violating the public policy and/or common laws of this state.

(Doc. 1, ¶ 55). Under the Alabama Deceptive Trade Practices Act, a plaintiff may recover treble damages. Ala. Code § 8-9-10(a)(2). Therefore, if Avectus, as Mr. McAteer alleges, did participate in the conduct described, then Avectus may be a real target of the ADTPA claim for damages.

It also is unclear whether Avectus is the real target of Mr. McAteer's request for declaratory and injunctive relief. Mr. McAteer asks the Court to declare that

the defendants "through their actions, policies, procedures and misconduct" have "violated the terms of their agreements with the various health insurance providers" and that the defendants' billing practices and policies are "invalid and void as a matter of law." (Doc. 1, ¶ 99). Mr. McAteer also seeks a declaration that the defendants have been unjustly enriched "through their actions and conduct" and an order that requires the defendants to "disgorge any unlawfully gained proceeds." (Doc. 1, ¶ 100(d)). Finally, Mr. McAteer asks the Court to enjoin the defendants "from engaging in the unlawful billing practices." (Doc. 1, ¶ 99). Again, because Mr. McAteer does not distinguish between DCH and Avectus in the complaint, the Court cannot determine from the face of the complaint whether Avectus is a significant target of the request for injunctive and declaratory relief.

To provide a record on which the Court may make an informed analysis of CAFA's home state exception, the Court instructs the parties to engage in jurisdictional discovery that will enable the parties to provide evidence that will allow the Court to determine whether Avectus is a primary target of this litigation.

## V.     Conclusion

For the reasons explained above, CAFA's local controversy exception does not apply. To advance the Court's analysis of CAFA's home state exception, the parties shall complete jurisdictional discovery **on or before April 16, 2018**. The Court **SETS** a status conference for **11:00 a.m.** on **April 24, 2018** in Courtroom

7B of the Hugo L. Black United States Courthouse, 1729 5th Ave. N., Birmingham, AL 35203.  The parties shall be prepared to present all evidence relevant to an analysis of the home state exception.

On the record before it, the Court denies the defendants' motions to dismiss (Docs. 10, 12) without prejudice.  The defendants may renew their arguments regarding CAFA's home state exception to the exercise of federal jurisdiction after the Court confers with parties during the April 24, 2018 status conference.

**DONE** and **ORDERED** this February 26, 2018.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE