UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MITCHELL MCATEER, *on Behalf of Himself and All Others Similarly Situated*,<br><br>　　　　Plaintiff,<br><br>v.<br><br>DCH REGIONAL MEDICAL CENTER; DCH HEALTH SYTEMS; AVECTUS HEALTHCARE SOLUTIONS, LLC,<br><br>　　　　Defendants. | Case No.: 2:17-cv-00859-MHH |

## MEMORANDUM OPINION AND ORDER

This class action suit comes before the Court on a renewed motion to dismiss filed by defendants DCH Regional Medical Center and DCH Health Systems, (Doc. 42), and a motion to dismiss filed by defendant Avectus Healthcare Solutions, LLC, (Doc. 46). On behalf of a proposed plaintiff class, Mitchell McAteer alleges that DCH and Avectus wrongfully billed and collected payments from insured patients and collected payments that exceeded what the DCH defendants were entitled to recover under their contracts with Blue Cross/Blue Shield of Alabama and other insurers. (Doc. 40, pp. 1, 3, ¶¶ 3, 11).

Mr. McAteer seeks recovery on seven counts: (1) violation of Alabama Deceptive Trade Practices Acts ("ADTPA"); (2) tortious interference with contractual relationship/business expectancy; (3) unjust enrichment; (4) money paid by mistake; (5) civil conspiracy; (6) breach of contract; and (7) injunctive relief. (Doc. 40, pp. 11–18). DCH and Avectus argue that the Court may not exercise jurisdiction over these state law claims under CAFA's home-state exception. For the reasons stated below, the Court disagrees.

## I. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).[1] When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *See Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015). The Court reviews Mr. McAteer's factual allegations accordingly.

---

[1] Mr. McAteer contends that the Court should analyze this motion as a Rule 12(b)(1) motion. (Doc. 49, pp. 2–3 n.1). CAFA's exceptions "do not affect the existence of subject matter jurisdiction." *Hunter v. City of Montgomery*, 859 F.3d 1329, 1334 (11th Cir. 2017) (emphasis in original). Rather, CAFA's "text recognizes that the court has jurisdiction but prevents the court from exercising it if either exception applies." *Hunter*, 859 F.3d at 1334. Accordingly, the Court evaluates the defendants' motions to dismiss under Rule 12(b)(6), not Rule 12(b)(1).

## II. BACKGROUND

DCH Health Systems, Inc. provides medical services and operates a medical facility called DCH Regional Medical Center. (Doc. 40, p. 2, ¶ 7). Defendant DCH Regional Medical Center is affiliated with DCH Health Systems, Inc. (Doc. 40, p. 2, ¶ 8).[2] DCH entered into contracts with health insurance providers, including Blue Cross/Blue Shield of Alabama, to provide medical services to insured patients at contracted rates. (Doc. 40, p. 3, ¶ 12). Those agreements obligate DCH to provide medical services to patients at the contract rate, bill the patients' insurance carriers, and accept payment from the patients' insurance carriers in satisfaction of the patients' debts. (Doc. 40, pp. 3–4, ¶ 12).

When a patient arrives at the hospital, DCH screens the patient to determine why the patient requires treatment and "whether payment sources other than health insurance are available." (Doc. 40, p. 4, ¶ 15). If DCH classifies a patient's account as part of its "accident claims group," then that patient's account is added to a "work list" that DCH provides to Avectus. (Sealed Doc. 48-1, p. 4; Sealed Doc. 48-2, p. 2). According to the agreement between Avectus and DCH, the phrase "accident claims group" refers to "those accounts of [DCH] which are identified as claims in which the patient's medical treatment is actually or potentially related to an accident

---

[2] The proper name of DCH Health Systems is DCH Healthcare Authority. DCH Healthcare Authority does business as DCH Regional Medical Center. (Doc. 30-2, p. 2, ¶ 2). The Court refers to the DCH defendants collectively as DCH.

or injury." (Sealed Doc. 48-2, p. 2). The agreement also provides that "[t]he parties have established a criteria for identifying these claims, which is attached hereto as Exhibit 'B'." (Sealed Doc. 48-2, p. 2). Exhibit "B" is a list of billing codes that cause a patient's file to be flagged for inclusion on ACH's "work list." (Sealed Doc. 48-2, p. 7; *see also* Sealed Doc. 48-1, p. 4).

If DCH places a patient's account on the "work list," then DCH submits that patient's files to Avectus rather than the patient's insurance carrier. (Doc. 40, p. 4, ¶¶ 16–17). When it receives a file, Avectus evaluates the file and determines whether the patient has sources of payment other than health insurance. (Doc. 40, p. 4, ¶¶16–17). If other payment sources exist, then Avectus contacts the patient and demands full payment for the medical services performed by DCH. (Doc. 40, p. 5, ¶ 19). In some cases, Avectus files and perfects liens on a patient's third-party tort claims; in others, Avectus seeks medical payment benefits from an auto insurer. (Doc. 40, p. 5, ¶ 20). Ultimately, Avectus negotiates with a patient and, according to Mr. McAteer, determines whether, and for what amount, to settle with that patient. (Doc. 40, p. 5, ¶ 21). For these services, Avectus receives from DCH a percentage of every dollar Avectus recovers. (Doc. 40, p. 5, ¶ 22; Sealed Doc. 48-2, p. 7).

In November of 2015, Mr. McAteer received emergency medical care at DCH for injuries resulting from an automobile accident. (Doc. 40, p. 6, ¶ 24). At the time, Mr. McAteer was insured with Blue Cross/Blue Shield of Alabama. (Doc. 40, p. 6,

¶ 25). Mr. McAteer provided his health insurance information to DCH. (Doc. 40, p. 6, ¶ 25). Three months later, Avectus began contacting Mr. McAteer and his attorney for information about his accident and insurance claims related to the accident. (Doc. 40, p. 7, ¶ 31). During these interactions, Avectus notified Mr. McAteer of a hospital lien asserted against him for $4,321.50. (Doc. 40, p. 7, ¶¶ 32–33). Mr. McAteer "paid $2,881.00 to satisfy DCH's lien." (Doc. 40, p. 7, ¶ 37).

Mr. McAteer alleges that DCH and Avectus gave him false or misleading information about DCH's billing practices and Avectus's involvement in the collection process. Specifically, Mr. McAteer alleges:

- "At the time of treatment, DCH never informed Plaintiff that it would not accept Plaintiff's health insurance. DCH never explained that it would be seeking the balance of Plaintiff's medical bills from him personally or by asserting a lien against his third-party tort claim. DCH failed to inform Plaintiff that DCH would be asserting a third-party lien against his personal injury recovery." (Doc. 40, p. 6, ¶ 26);

- "DCH . . . did not inform Plaintiff that it had a contract with BCBSAL, requiring Plaintiff's charges be submitted to BCBSAL for payment and that DCH was precluded from pursuing any charges from Plaintiff and/or any asset of Plaintiff." (Doc. 40, p. 6, ¶ 28);

- "Although Avectus represented that it was communicating with DCH concerning negotiation of the full amount of charges, Avectus acted independently in negotiating and reducing the amount of the lien. . . . Avectus never communicated with DCH about negotiation or settlement of Plaintiff's lien prior to agreeing to a reduced amount to satisfy the lien." (Doc. 40, p. 7, ¶ 36).

The Court previously found that CAFA provided a basis for federal subject matter jurisdiction here and that CAFA's local-controversy exception does not apply. (Doc. 36, p. 2). The record originally presented to the Court did not provide sufficient information to enable the Court to determine whether Avectus was a "primary defendant" for purposes of CAFA's home-state exception. (Doc. 36, pp. 15, 18). The Court ordered the parties to develop jurisdictional evidence on the issue. (Doc. 36, pp. 23–24).

Following jurisdictional discovery, Mr. McAteer filed an amended complaint. (Doc. 40). DCH moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), (Doc. 42), and Avectus moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), (Doc. 46).

### III. ANALYSIS

DCH and Avectus argue that the Court must decline jurisdiction because CAFA's home-state exception applies. (Doc. 46, p. 1). As the parties seeking dismissal, DCH and Avectus "bear the burden of showing that at least one of [CAFA's] exceptions does apply." *Hunter v. City of Montgomery*, 859 F.3d 1329, 1335 (11th Cir. 2017). DCH and Avectus have not carried that burden.

"CAFA grants subject matter jurisdiction to federal district courts over class actions in which (1) any member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant, (2) the aggregate amount in

controversy exceeds $5 million, and (3) the proposed plaintiff class contains at least 100 members." *South Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (citing 28 U.S.C. § 1332(d)(2), (5)–(6)).  A district court may not exercise that jurisdiction if one of CAFA's two exceptions applies.  *See* 28 U.S.C. § 1332(d)(4)(A), (B).  As noted, this Court previously found that the local-controversy exception does not apply in this case.  (Doc. 36, pp. 9–15).  That leaves the home-state exception.

The home-state exception applies if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(B). This Court previously found that two-thirds or more of the members of the plaintiff class are citizens of Alabama.  (Doc. 36, p. 15).  The parties agree that the DCH defendants are citizens of Alabama and primary defendants, (Doc. 40, p. 2, ¶ 8; Doc. 42, p. 6; Doc. 46, p. 2), and that Avectus is not a citizen of Alabama.  (Doc. 40, pp. 2–3, ¶ 9; Doc. 46, p. 2).  The parties dispute whether Avectus is a "primary defendant" under CAFA.  If Avectus is not a primary defendant, then the home-state exception will apply, and this Court may not exercise jurisdiction.  If Avectus is a primary defendant, then the home-state exception will not apply, and this Court may exercise jurisdiction over Mr. McAteer's action.

In *Hunter v. City of Montgomery*, the Eleventh Circuit observed that CAFA does not define the term "primary defendant" and that the language of the statute provides "no contextual clues as to its meaning." 859 F.3d at 1335. Turning to CAFA's legislative history, the Court of Appeals noted:

> [t]he explanation in the committee reports makes the primary factor in answering the primary defendant question the potential monetary loss that defendant faces—whether it is the real target of the claims seeking damages, has substantial exposure to damages if liability is found, and would incur most of the loss if damages are awarded.

*Hunter*, 859 F.3d at 1336. The Eleventh Circuit cited favorably the Third Circuit's decision in *Vodenichar v. Halcon Energy Props.*, 733 F.3d 497 (3d Cir. 2013). There, the Third Circuit concluded that the "House Judiciary Committee's report and other legislative history supports 'constru[ing] the words "primary defendants" to capture those who are directly liable to the proposed class, as opposed to being vicariously or secondarily liable based upon theories of contribution or indemnification.'" *Hunter*, 859 F.3d at 1336 (quoting *Vodenichar*, 733 F.3d at 504–05). Adopting the Third Circuit's reasoning, the Eleventh Circuit held that in cases "where monetary relief is sought," district courts should "ask 'whether, given the claims asserted against the defendant, [the defendant] has potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable.'" *Hunter*, 859 F.3d at 1336 (quoting *Vodenichar*, 733 F.3d at 505–06).

Avectus is a "real target" of the claims asserted, because Mr. McAteer "seek[s] to hold [Avectus] responsible for its own actions, as opposed to seeking to have it pay for the actions of others." *Vodenichar*, 733 F.3d at 505; *see also Hunter*, 859 F.3d at 1336. And Avectus is likely the only potential target of at least one of Mr. McAteer's claims, namely his tortious interference claim.[3] This factor cuts in favor of denying the motions to dismiss.

Mr. McAteer asserts against Avectus the following tort claims: violation of the Alabama Deceptive Trade Practices Act; tortious interference with a contractual relationship or business expectancy; and civil conspiracy. Each claim rests on a similar factual predicate. According to Mr. McAteer, Avectus evaluated his patient file, contacted him about a potential settlement, negotiated a settlement amount with him, and agreed to accept that amount as payment for his medical expenses, despite having knowledge that he had health insurance coverage from Blue Cross/Blue Shield. (Doc. 40, p. 5, ¶¶ 19–21). While DCH's act of sending patient files to Avectus is a necessary pre-condition of Avectus's alleged improper collection efforts, Mr. McAteer does not seek to hold Avectus liable for DCH's conduct. Instead, Mr. McAteer's claims against Avectus are based on Avectus's debt-collection efforts, in which Avectus "independently reviews and investigates patient

---

[3] Mr. McAteer asserts his tortious interference claim against all of the defendants (Doc. 40, pp. 12–14), but under Alabama law, he likely may maintain this claim only against Avectus. *See* p. 11 below.

9

files submitted by DCH and determines"—by "exercising its own judgment"—"whether it can recover a patient's medical bills." (Doc. 40, p. 5, ¶¶ 19, 21). Those allegations, if true, demonstrate that Avectus caused direct harm to Mr. McAteer and similarly situated DCH patients. Recovery against Avectus would follow directly from Avectus's interactions with Mr. McAteer, as opposed to DCH's interactions with Mr. McAteer.

Avectus argues that its exposure is insignificant compared to DCH's exposure because the "class, by definition, includes persons for whom Avectus may not have played any role in obtaining payment." (Doc. 46, p. 12). But Avectus and DCH have not provided factual support for this conclusory statement. The first amended complaint describes the potential plaintiff class as follows:

> All Alabama residents who have received any type of healthcare treatment from any entity located in Alabama that is owned or affiliated with Defendants DCH Regional Medical Center and/or Defendant DCH Health Systems while being covered by valid commercial health insurance, and whose medical bills resulting from that treatment were either not submitted to health insurance for payment or were submitted and thereafter Defendants refunded those payments to their health insurance carriers and Defendants obtained payment for those bills directly from the patient, from an auto insurer, and/or from the patient's third-party tort recovery (hereinafter "Class" or "Class Members").

(Doc. 40, p. 8, ¶ 40(a)). Because the class, by definition, consists of only patients from whom Avectus sought payment from sources other than health insurance, pursuant to Avectus's contract with DCH, Avectus seems to have exposure to all

class members.  If DCH obtained some of those payments without Avectus's assistance, then DCH would have evidence to prove the point, but it has offered none.  DCH and Avectus have not carried their burden of establishing that Avectus has little exposure to the class relative to DCH.

For Mr. McAteer and every class member who has a tort claim against Avectus because of Avectus's collection efforts, at least one of those tort claims—tortious interference—likely is viable only against Avectus, not DCH.  Under Alabama law, a plaintiff may not pursue a tortious interference claims against a party to the contract at issue.  *Parsons v. Aaron*, 849 So. 2d 932, 946 (Ala. 2002) (citations omitted) ("[A] party to a contract cannot, as a matter of law, be liable for tortious interference with the contract.").  Here, it does not appear that a tortious interference claim against DCH for interference with the DCH–Blue Cross/Blue Shield contract is viable under Alabama law.  On this claim, Mr. McAteer and other class members may recover both compensatory and punitive damages.  A punitive damages award of up to three times the compensatory presumptively is constitutionally sound.  Therefore, Mr. McAteer and the members of the plaintiff class potentially may recover significant damages from Avectus under this tort claim.

Mr. McAteer's other tort claims against Avectus are based on DCH's initial failure to submit claims for payment to Blue Cross/Blue Shield and Avectus's debt-collection efforts.  Under Alabama law, Avectus and DCH are joint tortfeasors as to

those claims and are jointly and severally liable for all liability flowing from Mr. McAteer's ADTPA and civil conspiracy claims. *Brassfield v. Jack McLendon Furniture, Inc.*, 953 F. Supp. 1424, 1429 (M.D. Ala. 1996) (citing *Huntsville v. Davis*, 456 So. 2d 72, 74 (Ala. 1984)) ("A plaintiff may maintain a joint and several action based on the concerted or independent actions of defendants."); *see also Matkin v. Smith*, 643 So. 2d 949, 951 (Ala. 1994) (concluding that there is no apportionment of damages among joint tortfeasors).[4] As a result, Avectus and DCH are equally liable for compensatory damages on these two tort claims. And Avectus is subject to treble damages under the ADTPA.

Avectus argues that it cannot be a primary defendant on Mr. McAteer's equitable claims for unjust enrichment and money paid by mistake because, under the agreement between Avectus and DCH, Avectus received only a small percent "of any alleged unlawful payment by the members of the putative class." (Doc. 46, p. 11; *see also* Sealed Doc. 48-2, p. 7). As a result, Avectus argues, on the quasi-contract claims, it would not "sustain a substantial loss as compared to other defendants if found liable." (Doc. 46, p. 11 (quoting *Hunter*, 859 F.3d at 1336)). But that does not matter because Avectus is a real and substantial target of the

---

[4] Whether actions by two tortfeasors produce joint-tortfeasor liability normally is a question of fact. *See Breland v. Rich*, 69 So. 3d 803, 825 (Ala. 2011).

plaintiffs' tort claims for damages, and district courts look at a lawsuit holistically to determine which defendants are the "real targets" of the litigation.

## IV. CONCLUSION

For the reasons explained above, CAFA's home-state exception does not apply. Thus, the Court denies the defendants' motions to dismiss.

**DONE** and **ORDERED** this January 2, 2020.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE